2021-13-48 relies on a combination having an interesting effect, having increased play value, being more enjoyable, or opening by magic. All of these advantages, all of these motivations, are generic, subjective advantages of the combination. Even if we accept the Board's findings as complete and based on a correct reading of the record, there is still not substantial evidence the Board's obvious determination must be reversed. Generic advantages are inadequate to support obviousness. The Board's final written decisions evidence a disconnect between what is desirable for toys, that they are fun, that they are interesting, and why the modification would be fun or interesting for the specific proposed combination. The Board repeatedly dismissed the patent owner, Spin Master's evidence, instead relying on a motivation, quote, rooted in the reference's teachings, or relying on Dr. Kudrowitz's testimony because, quote, the record supports it. So what's wrong with having a motivation rooted in the teachings? I accept the proposition that you can't just say because it's a toy, the motivation of making it more fun is always meaningful. But here, in the actual teachings, they talk about the benefits of the magic changes that occur to these toys. So why doesn't that move it past the generic stage into the more specific stage? Good question, Your Honor, and I have two answers for that, two points made. First of all, the advantage of an interesting effect is not due to the magnetic latch alone. Tamiyama talks about, and I'm going to quote Tamiyama, that the interesting effect is the turret popping off and that this interesting effect resembles the effect of a tank hitting a land mine and being destroyed. So the advantage of an interesting effect in Tamiyama is not the latch alone. It's the Tamiyama toy in whole. It's the turret popping off. It's being the simulation of destruction. So to take that advantage of an interesting effect and say that it's due to the latch alone, and that would be a reason why to modify Shannon, there's no factual basis for that. And Dr. Kudrowitz's testimony was very much conclusory. I invite the court, as I'm sure they have, to read his opinions. They are very conclusory. And what happened is it became this circular argument where the board just cited this interesting effect, a conclusory statement from Dr. Kudrowitz, without nothing more. I 100% agree with the court that a teaching or a suggestion, an express motivation in the references, is a possible motivation to combine. Except here, the teaching or suggestion is this generalized advantage. So we're back to the problem that even the reference... It does, Your Honor. But if we read Tamiyama, it says that the interesting effect is due, resembles the effect of a tank hitting a landmine and being destroyed. It is the turret popping off and simulating destruction. Of course, the latch plays a part in that. But to say that the latch alone causes the interesting effect, there's no evidence of record to support that. The board allowed hindsight to enter the analysis. I want to quote a couple of the statements from the petition and from Dr. Kudrowitz. In the petition, it said that it's obvious to make the modification, quote, to allow the toy to open upon being rolled. Dr. Kudrowitz said a Pazita would understand the fastener, quote, could be used if the Pazita wanted the toy to open upon being rolled over a magnet. As soon as the analysis is whether the modification could be made to allow for the claimed combination, or if a Pazita wanted the claimed combination, then hindsight has been employed. Here, even more problematic is that the board favorably sided repeatedly to these statements in its final written decision. I agree that that was a strange way to phrase it, but isn't the point that the board found that you would want to use this magnetically charged mechanism or that it would be more interesting to use the magnetically charged mechanism to cause the alteration in the toy? I would challenge back, where is the evidence to support that? If all we're relying on is that there's an interesting effect or that it's interesting to use this magnetic latch, at that point it becomes a conclusory, generalized advantage in a subjective opinion from the expert. He didn't provide any rationale, any factual basis. Again, his opinions are a sentence of an opinion, and then no explanation. Even now, to this day, with this very full and complete record, I still question some of the motivations combined on where is the why we would even make this proposed change? Let's take Shannon in view of Tamiyama, for example. What would you have him say? It's more interesting to do it this way. That's not enough. What would you say is sufficient in this context? To establish a motivation to combine? I think that if you had a toy where the latching mechanism was not quite working correctly, for example in Shannon, it didn't latch correctly. What would you say about this combination? What would you have him say that he didn't say? I think that question shows the problem with the combination. That the motivation is there's these disparate elements in the prior art, and we want to get to this claim combination. Judge Dyke, respectfully, you're asking me to make a motivation to combine for them. I'm asking you to spell out what was lacking in the detail here. What was he supposed to say? I'm going to answer that back with this. There is numerous evidence in the record of the problems with the motivation to combine. For example, modifying Shannon. The board dismissed all of Spin Master's evidence and repeatedly said, we don't need that evidence because the motivation, this generic advantage is rooted in the reference's teachings. If we allow that generic advantage to overcome the evidence of substantial redesign, the evidence of a change in the principle of operation and render unsatisfactory for an intended purpose, then we've moved the obviousness of determination to, can an advantage be established? If so, then we have obviousness. That's not the source. That would seem that there's a difference between what's your motivation, because we've said it could come from anywhere, and whether there's a reasonable likelihood of success. When you said it's not even clear that you could do this properly, doesn't that go to the latter instead of the former? I would suggest that if there is a change in principle of operation, perhaps substantial redesign would go to a reasonable expectation of success, but a change in principle of operation I think does go to the motivation to combine. It can be used. Render unsatisfactory could be used to defeat a motivation to combine. When there's evidence of that in the record and it gets dismissed, outright dismissed, in favor of this generalized advantage, we've taken the obviousness analysis too far. We've allowed too much leniency in pointing to an advantage and saying that is sufficient for the motivation to combine. I want to maybe go back to what you asked, Judge Dyke. I think there's a tendency with this particular technology, because it's toys, to go, it's a toy. It's supposed to be magical. It's supposed to be fun and interesting. Let's take the apreel modified by Thompson example. That motivation to combine is because Thompson can be used to play a variety of games, but Thompson, the variety of games, is hitting the sensitive spot. It has nothing to do with the proposed modification of taking the fact that Thompson is a round ball. They say, well, we can do this because balls are ubiquitous, because round balls are ubiquitous. Let's take that argument to its logical outcome. Are we now going to say that any toy with any type of latch can be modified to be round because balls are fun? That's where their argument lies. It's taking an advantage and saying, just because it's a toy and toys are fun and interesting, that we can make this modification. I see that I have about five minutes left. I'll reserve it for rebuttal, Your Honors, if there's no further questions. We will save it for you. Thank you. Mr. Yu, you may take off your mask if you wish. Thank you, Your Honor. I forgot about that. May it please the Court, this is Scott Yu, counsel for Appellate Choi Rock Contents Factory. In each of the three underlying IPRs, the Board provided extensive analysis of how the references teach a motivation to combine with a reasonable expectation of success. I would like to highlight three things today to show that those findings that the Board made are substantially supportive. First, why the prior teachings are not generic. Second, why the at least a difference in prior latches does not rebut the finding of a motivation to combine. And third, how Speedmaster is applying a wrong task for the reasonable expectation of success analysis. Can you go to where your friend on the other side ended? I do have a bit of a problem with the notion that it feels like the Board simply said, well, these are toys, so it doesn't matter. And especially as to the Thompson ball, that variety of games, to say you can use a ball for a variety of games, that seems so broad that it could be applied to almost any toy. Yes, Your Honor. I can address that. In the ground for Aprila and Thompson, you really have to look at the actual teachings of the prior here. They might seem different. However, if you look at the actual teachings there, they share the common goals of providing interesting effect or surprising effect by changing the shape of a toy through the unlatching of the latch means. For example, in Prelag, its purpose is to provide a toy with an amusing effect. And Thompson teaches that its ball toy is well suited to play a great variety of games to provide great pleasure for children. And one of the goals expressed in Thompson is to play the toy for the goal of opening up by using of a latch. And therefore, we think that by looking at Prelag's desire to provide an amusing effect, a person of skill in the art would have been motivated to apply Thompson's ball shape to Prelag's toy to provide him great pleasure for playing games that involve magnetic opening of the toy to allow the ball to play with a great variety of games including tossing the ball or even throwing or rolling the ball. Well that's, I mean, as your friend said, the expert testimony said, well if you want to get to a magnetic mechanism, then you would look at this magnetic mechanism. So the question is why isn't the toy fine the way it is? Why do you need that magnetic mechanism? What does it bring? Because we are talking about a very specific subset of toys, for example, transformable toys that change shape through use of a latch in an interesting or surprising manner. And the toys, the transformable toys are designed to provide interesting effect. And when you look at these common goals of transformable toys that are intended to provide an interesting effect, that we think that a desire to make it even more entertaining, more interesting by having a more dramatically opening up of the toy by using a magnetic latch instead of a typical latch, we think that would provide a good reason for ordinary skill in the art to adopt that magnetic latch feature. So this would mean that any transformable toy would be obvious under this scenario? Your Honor, I wouldn't go that far. We think still the prior teachings here in this case are very specifically tied to transformable toys that change shape in an interesting manner by use of a latch or magnetic latch. Counsel, could you tell us the pronunciation of your client's name? Oh, sure, Your Honor. It's a Korean company. The correct pronunciation would be Choi Rock. I would like to move to the second issue. The Speedmaster's reliance on at least a difference in prior latches is misplaced because it fails to explain why merely having that difference in prior latches would discourage one of skill in the art from considering the references here. We would think that rather that person would be motivated to combine the references because of that at least difference. One example, as Judge O'Malley mentioned, Shannon and Prelay combination, our proposed modification, enhance the operation of Shannon's toy by adding magnetic interaction to the latch, thereby contributing to achieving the goal of Shannon, which is to provide a dramatic opening. Speedmaster presents similar arguments that are deviated from the correct test for obviousness in other parts of his opening brief. One example of the argument would be that adding Shannon to include another latch means renders the fastener or lattice disclosed in Shannon superfluous. Do you agree that Tamiyana's magnetic latch doesn't actually hold the whole toy together? Excuse me, Your Honor, in Shannon toy? Yeah, it doesn't. No, Tamiyana. It doesn't fasten the tank together, right? The magnetic latch? I believe it fastens... So it's only transformable in one little way, in other words, the turret popping off. Correct, Your Honor. Okay, so it's not the same concept of holding it together like the opening toy. Compared to Shannon's rollable shape, I agree, but it still provides the same effect of providing a surprise or interesting manner by use of unlatching through two magnets. So that feature would be similar in both toys. Going back to my argument about the at least difference in prior latches, two extreme theories are presented by Speedmaster. If you combine them together, it would potentially eliminate obviousness cases. For example, they argue that if there is a similar or same feature in the prior R, then you cannot combine them because it would be a superfluous to add a similar feature to the prior R. On the other hand, they argue that if there is a material difference in prior R, then you cannot combine either because of that difference. And even worse, Speedmaster has a third limitation by arguing that if there is a subtle difference in prior R, then you cannot motivate someone to invent something that is so great. But we think that whether there are inconsequential or subtle differences in prior R does not rebut the finding of a motivation to combine in this case because, as I explained, at least the difference in prior latches would rather motivate one of scaling the R to consider combining the references. I would like to move to the third issue, which concerns the reasonable expectation of success analysis. Speedmaster comes up with one of the most complicated ways to combine the references and argue non-obviousness based on the assumption that it would be the only way to combine the absolute success in developing the claimed invention. And when applying this task, two things need to be considered as well. The first claim that issue, and second, the level of ordinary scaling the R. And talking about the claims first, the claims here only require that a latch is disengaged when magnetic force is generated between the two magnets. And the claims do not require any specialized latch or any specialized structure for the latch. Second, the level of ordinary scaling the R in this case is undisputed, which is a person having a bachelor's degree in mechanical engineering and a minimum of three years of toy design experience. And we don't think Speedmaster properly considered these two factors in its background of 897 IPR. Speedmaster wrongfully assumes that the entire release mechanism of Tamiyama would need to be modified into the Shannon toy. And they argued that is a very complicated mechanism. Therefore, it would require a complete redesign of the Shannon toy. But we think that the level of complexity involved in this case does not make our proposed modifications unreasonably difficult. Because we are not trying to make a space shuttle. We're only talking about transformable toys. And magnets, latches, springs have been used in toys for many decades. Good example of the Tamiyama reference, which is 1963 reference that already shows how to use a magnetically released latch in a transformable toy. So you're relying on the fact that your expert just said it's within the ordinary scale. Don't you need a little more than that? Your Honor, I believe we provided more than just that testimony from our expert. We also relied on the fact that the Tamiyama, for example, already shows, according to Speedmaster, a very complicated latch mechanism. But we also supplemented our expert testimony by relying on Tamiyama's teaching of using the magnetic latch mechanism in 1963. So on the 508, is the Tamiyama alone your primary reference? In the IPR, it was not the only primary reference. On the appeal, I think there are three combinations we allege that are at issue on Tamiyama alone ground. Shannon, in view of Tamiyama, and Shannon, in view of Tamiyama and Speedland. So only Tamiyama alone ground uses Tamiyama as a primary reference. Right. So my question is, do you think your strongest case is Tamiyama alone? Or do you think that we need to look to the three reference disclosures? That's something I don't think I can really speak on behalf of the court. But my belief is that the Shannon in view of Tamiyama and also in view of Preland, that ground needs to be considered by the panel to the extent that that provides a different motivation to combine a reasonable expectation of success. So you think that's the strongest combination for you? Not necessarily the strongest combination, but I think we have the right to be reviewed by the panel on all those three grounds to the extent that they provide a different analysis, Your Honor. Okay, so what do you think is your strongest combination? I believe it will be Shannon, Tamiyama, and Preland. Okay. One more thing that I would like to address about the reasonable expectation of success analysis in Shannon and Tamiyama ground is we have repeatedly argued in the IPR that the one of scaling the art would understand by looking at Tamiyama that only a single latch component from Tamiyama's mechanism would need to be incorporated into Shannon because that is what is required for the Shannon toy. And there is no need to have the driving mechanism of Tamiyama, including the motors, that need to be modified into Shannon because Shannon is already in a rollable shape. One more thing that I would like to highlight today, Your Honor, is Speedmaster's incorporation by reference of the arguments from the 900 IPR to the 897 IPR. We already addressed in our response and also in the pending motion to strike, but I would like to highlight just one more thing in the Shannon-Tamiyama ground of the 897 IPR. In that ground, Speedmaster's opening brief contains only a single paragraph regarding the motivation to combine analysis, basically incorporating the entire section devoted to the 900 IPR. But in its reply, they raised new arguments for the first time on appeal that concern the principle of operation of Shannon. I've got to tell you, I think that filing a motion to strike under these circumstances is not proper. I think it is appropriate for you to address those issues of oral argument, but I think a motion to strike is not the right way to do it. But that's just my personal view of the data. Thank you, Your Honor. But if I may, I would like to finish up my argument here. So those arguments, we didn't have an opportunity to address because those were raised in reply, and some of those arguments are specific to Tamiyama's turret that have nothing to do with the pre-laid Shannon ground of the 900 IPR. So if the panel does not have any additional questions... Thank you, Counsel. Ms. Bailey has a little time left, five minutes if you need it. Thank you, Your Honor. I want to address something my counsel said regarding the dramatic opening of Shannon, and it gets to a larger problem with the motivations to combine overall. All of these references already have a latching means, so why are we adding another latching means? It is superfluous, and your case law does not allow for a superfluous addition to the primary reference. Additionally, Shannon already has a dramatic opening, so why do we need to add a second external magnet to get a dramatic opening? What's happening is we're just changing the Shannon invention and toy to something that's different. It's a different toy overall. The next thing I want to address is the appreal and the opening by magic language. I want to make sure that the court realizes that that language is used in the embodiment with the princess doll. You can see in the figures the princess doll is rigid, it stands upright, and the second external magnet is housed in the bottom of the princess doll. Appreal says that when the princess doll goes and walks up to the toy container, the toy container magically opens because it's this unexpected opening because the magnet is housed in the princess doll. That is a very different toy play than what is claimed and what is in the proposed combination. Second, I wanted to address counsel's statement regarding that our proposed motivation in reading the references was the most complicated that we can be. If I may take a little umbrage at that statement, it's because the petition did not explain whatsoever how the modification was supposed to be made. It did not explain what was meant by the latch. It was only during deposition testimony that we understood that Troy Rock was intending a rocker latch with a spring. We, the patent owner, were left to try to figure out how the modification was supposed to be made. To say that we chose the most complicated one immediately puts us at a disadvantage as the patent owner, and the petition did not plead with the particularity required. I also want to address his comment regarding Appreal and the amusing effect for the doll. That amusing effect for the doll is the second embodiment that is unrelated to the toy container. That amusing effect is because the two dolls come together and they jump and dance around. That's where the amusing effect comes. To say that an amusing effect could be applied to Shannon doesn't take into account that they're actually talking about the combination is based on the container embodiment. Also, Dr. Kudrowitz mentioned a couple of times during his declaration that the combination would have added interactivity or functionality. I want to address those statements because, again, it is a There's never any explanation of what is the added interactivity or what is the added functionality or why either of those would be desirable in the combination or would get you to that in the combination. The most we got from Dr. Kudrowitz was, and he was talking about this with respect to Thompson, that it's a ball and balls are ubiquitous. Then we're kind of back to that same problem of, is he proposing that every toy can be made into a ball because balls are fun? Finally, there's some accusations of bodily incorporation from counsel. I just want to say that I am very aware of bodily incorporation law and our briefing is very careful never to say that the entire Tomoyama latching mechanism needs to be put into Shannon. Obviously, something from Tomoyama needs to be put into Shannon, but our briefing is not dependent upon a bodily incorporation of everything from a secondary into the primary reference. If there are no more questions, Your Honor. Thank you, counsel. Thank you.